UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |
|---|---|
| RODNEY G. DAVIS, | ) |
|     Plaintiff, | ) Civil Action No. |
| v. | ) 5:14-cv-169-JMH |
|  | ) **MEMORANDUM OPINION AND ORDER** |
| OWNERS INSURANCE COMPANY, | ) |
|     Defendant. | ) |

\*\*\*

This matter is before the Court upon the parties' cross-motions for summary judgment on the issue of whether the Default Judgment and entry of damages against Marvin Cazun by the Fayette Circuit Court on November 27, 2013 is enforceable against Defendant: Plaintiff's Motion at DE 23, Response at DE 26, and Reply at DE 28; and Defendant's Motion at DE 24, Response at DE 25, and Reply at 27.  For the reasons stated below, Plaintiff's Motion for Summary Judgment [DE 23] will be DENIED, and Defendant's Motion for Summary Judgment [DE 24] will be GRANTED.

**STANDARD**

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show the district court that no genuine issue of material fact exists, and the Court must view all evidence in the light most favorable to the nonmoving

1

party, drawing all justifiable inferences in the nonmoving party's favor. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir.2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, the Court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant, Owners insurance Company ("Owners"), issued a Personal Automobile Policy to Plaintiff, Rodney G. Davis ("Davis"), policy number 47-747-896-00, effective August 14, 2011 through February 14, 2012 (the "Policy"). The Policy included uninsured motorist coverage on eight separate vehicles, in the amount of $100,000 each, which coverages were stackable. On November 28, 2011, Plaintiff was injured in an automobile accident when his vehicle collided with a vehicle driven by Marvin Cazun ("Cazun") in Lexington, Kentucky. Cazun, an undocumented resident of this country, was an uninsured motorist. Davis placed Defendant, Owners Insurance Company ("Owners"), who was Plaintiff's automobile insurer, on notice of the collision, and

demanded the limits of his uninsured motorize coverage from Defendant. Plaintiff and Defendant commenced communications and settlement negotiations regarding Plaintiff's claim.

On January 7, 2013, Plaintiff brought a personal injury action against Cazun in Fayette Circuit Court styled *Rodney Davis v. Marvin Cazun*, Civil Action No. 13-CI-0061 (the "Fayette Circuit Court Action"). [DE 24-3]. Plaintiff did not sue Defendant in the Fayette Circuit Court Action. On July 3, 2013, Davis advised Defendant by letter that if it wished to be a party to the Fayette Circuit Court Action, it should enter an appearance. On July 15, 2013, Defendant suggested, by email, that Plaintiff file an Amended Complaint naming Defendant in the Fayette Circuit Court Action. On August 8, 2013, Defendant filed an intervening complaint against Cazun in the Fayette Circuit Court Action asserting a subrogation crossclaim for any amount Defendant might have to pay Plaintiff as a result of Plaintiff's uninsured motorist coverage.[1] [DE 24-8].

On November 22, 2013, Plaintiff and Defendant unsuccessfully mediated Plaintiff's uninsured motorist claims. Following the mediation, on November 23, 2013, Defendant attempted to file an Amended Intervening Complaint to assert a declaration of rights against Davis with respect to the applicability of a provision of the uninsured motorist policy, specifically, the "consent to sue"

---

[1] Plaintiff had previously filed an independent subrogation action against Cazun in Fayette Circuit Court on August 10, 2012. [DE 23-6, Fayette Circuit Court, Civil Action No. 12-CI-3679]

3

provision. [DE 24-13]. Defendant also filed an Objection and Motion to Continue the damages hearing, which was scheduled for November 27, 2013, asking the Court to postpone the damages hearing until it had an opportunity to rule on the applicability of the "consent to sue" provision. [DE 24-12].

On November 27, 2013, the Fayette Circuit Court heard oral arguments on Defendant's Objection and Motion to Continue and on the Motion for Leave to File Amended Intervening Complaint. From the bench, the Honorable Judge Pamela Goodwine overruled both the motion for leave to file an amended complaint and the motion to continue. [DE 24-16]. Plaintiff states that the Fayette Circuit Court overruled Owners' motions because they were untimely pursuant to the local rules of the Fayette Circuit Court. However, a review of the hearing transcript reveals that Judge Goodwine overruled the motions on the basis that Davis was entitled to proceed with the damages hearing against Cazun, the sole party Davis had asserted a claim against, and that the interpretation of the insurance policy was an issue to be determined in an enforcement against between Davis and Owners at a later date. [DE 24-16]. During the oral arguments, counsel for Owners stated to the Fayette Circuit Court that it did not give consent to be bound by the default judgment. The Fayette Circuit Court acknowledged that Owners did not consent to the damages hearing at the hearing

4

and in its subsequent written order of December 5, 2013, which states as follows:

> IT IS HEREBY ORDERED that Owners Insurance Company Motion to Continue the default judgment damages hearing is OVERRULED as Owners Insurance Company does not have standing to prevent or contest the hearing on damages with respect to the default judgment against Marvin G. Cazun. The Court further finds that Owners Insurance Company does not consent to the default judgment against Marvin G. Cazun.
>
> IT IS FURTHER ORDERED that Owners Insurance Company Motion for Leave to file an Amended Intervening Complaint is OVERRULED as [there is] not a justiciable controversy as Rodney Davis has not presented an uninsured motorist claim against Owners Insurance Company in this action.

[DE 24-18].

Immediately following the oral arguments on the pending motions, Davis presented a damages hearing, which was uncontested. Owners did not participate in the damages hearing. The Fayette Circuit Court took notice of Plaintiff's testimony regarding his injuries, medical expenses, pain and suffering, lost wages and impairment of his ability to earn income and entered a judgment against Cazun in the amount of $644.984.67, which is the full amount of damages Davis requested. [DE 24-17].

On December 3, 2013, via written correspondence, Davis demanded payment by Owners for the default judgment. While acknowledging that Plaintiff's insurance policy provides uninsured motorist coverage, Defendant nevertheless refused to pay the default judgment because Plaintiff had failed to obtain written

5

consent from Defendant pursuant to the insurance policy's "consent to sue" provision prior to obtaining the judgment. As a result, Plaintiff filed suit in Madison Circuit Court seeking to recover the judgment amount entered in the Fayette Circuit Court Action asserting claims for breach of contract, declaratory judgment, violation of KRS 367.170, and punitive damages. Defendant removed the action to this Court.

Plaintiff's Motion for Summary Judgment asks the Court to enforce the Default Judgment and damages entered in the Fayette Circuit Court Action while Defendant's motion asks the Court to find that it is not bound by the default judgment and damages. Plaintiff argues that Defendant, as an intervening party to the Fayette Circuit Court Action, waived its right to avoid enforcement of Plaintiff's judgment by not defending the claim and that the "consent to sue" provision relied upon by Defendant is against public policy. Defendant argues, on the contrary, that the "consent to sue" clause is enforceable under Kentucky law and that Defendant never consented to the judgment entered in the Fayette Circuit Court Action. Defendant further argues that Defendant took affirmative efforts to protect its interests in the Fayette Circuit Court Action, that Defendant is prejudiced by the Fayette Circuit Court Action judgment because it was not an adversarial proceeding, and that Plaintiff is collaterally and judicially estopped from demanding that Defendant pay the judgment rendered

6

against Cazun because Plaintiff previously represented that it was only pursuing a claim against Cazun in the Fayette Circuit Court Action.

## DISCUSSION

There is no dispute that Owners issued its Personal Automobile Policy number 47-747-896-00, effective August 14, 2011 through February 14, 2012, to Davis, and that Davis is entitled to uninsured motorist coverage pursuant to the policy. Rather, the issue before the Court is whether the "consent to sue" clause set forth in the uninsured motorist coverage of the Policy is valid under Kentucky law, and, if so, whether it is enforceable by Defendant such that Defendant is not bound by the Fayette Circuit Court judgment.

The uninsured motorist coverage of the Policy provides, in relevant part, as follows:

2. COVERAGE

> d. Whether an injured person is legally entitled to recover damages and the amount of the damages shall be determined by an agreement between the insured person and **us**. **We** will not be bound by any judgments for damages obtained or settlements made without our written consent.

[DE 24-24, emphasis in original]. In the case of *Newark Ins. Co. v. Ezell*, 520 S.W.2d 318, 320 (Ky. 1975), the Supreme Court of Kentucky held that "consent to sue" clauses that merely deny the conclusiveness of judgment against an uninsured motorist as to the

7

issues of liability and damages where written consent of the insured is not obtained (rather than deny uninsured motorist coverage altogether), such as the clause in Davis's policy, are valid.[2] However, in *Newark*, the Court limited the enforceability of "consent" clauses to situations where the insurer can demonstrate prejudice from the insured's failure to obtain consent, that is, that one of the protective purposes of the "consent" clause has been impaired. *Id*. at 321. The Court gave the following examples of protective purposes of "consent" clauses to the insurer: to provide protection against exposure to counterclaims, to guard against collusion between the insured and the uninsured motorist, and to prevent impairment of subrogation rights. *Id*.

Ultimately, in *Newark*, where the insured brought a direct action against the insurer and the insurer moved to dismiss the action for failure to state a claim upon which relief may be granted (which is distinguishable from the case herein), the Court held that the "consent" clause at issue was unenforceable because the insurer failed to demonstrate that it was prejudiced by the insured's failure to obtain consent. *Id.* Putting great weight on

---

[2]The "consent" clause in *Newark*, which is similar to the one in Davis's policy, provided: "No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive as between the insured and the company of the issues of liability of such person or organization or the amount of damages to which insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company."

8

the fact that the insurer had previously insisted that the insured first obtain judgment against the uninsured motorist, the Court held that the insurer could not later claim it was prejudiced by the insured's failure to obtain consent to the insured's judgment against the uninsured motorist. *Id.*

Here, the "consent" provision, which is substantially similar to the one interpreted in *Newark*, clearly and unambiguously provides that Owners "will not be bound by any judgments for damages obtained or settlements made without our written consent." There is no evidence in the record that Davis obtained the written consent of Owners to be bound by the judgment against Cazun. Rather, the evidence shows that Owners took affirmative steps to demonstrate to Davis and the Fayette Circuit Court that it did not consent to a judgment obtained in the Cazun action. Owners sought to have Davis execute an Agreed Order confirming that Davis had not stated a claim in the Cazun action for uninsured motorist benefits, that Owners had not permitted conduct discovery or defend such a claim, and that Owners did not consent to the default judgment as to liability or the damages hearing predicate thereon, but Davis declined to execute the proposed Agreed Order. This is in stark contrast to the insurer's conduct in *Newark*, in which the insurer ignored the lawsuit filed by the insured against the uninsured motorist.

9

Given that Owners plainly did not consent to the judgment against Cazun, the next question is whether Owners has advanced any ground upon which it reasonably withheld its consent, that is, that Owners was relying on the consent provision for a protective purpose and that, by Davis's failure to obtain consent, Owners was prejudiced. Owners argues it has been prejudiced by its inability to participate in the litigation between Davis and Cazun to dispute liability and the amount of damages to which Davis is entitled. Davis takes the position that if Owners wanted to dispute the amount of damages to which Davis was entitled under his uninsured motorist coverage, Owners should have asserted those claims in the Cazun litigation and taken discovery, but that Owners failed to do so. In response, Owners argues that it was Davis's decision, as the injured insured, as to who to assert a claim against and when, and that Davis chose to file a tort claim against Cazun only in Fayette Circuit Court, not naming Owners or asserting an uninsured motorist claim, in an attempt to get an undefended default judgment against Cazun. Owners further argues that Davis declined Owners' discovery requests because Owners had not asserted any claim against Davis in the Cazun action. In essence, it appears that the parties were at a standoff in the Cazun action in Fayette Circuit Court: Davis not wanting Owners to interfere with his uninsured motorist claim against Cazun, and Owners refusing

consent to the judgment against Cazun without participating in the litigation.

A review of the record shows that in July of 2013, Owners requested, through counsel, that Davis file an Amended Complaint and name Owners in the Cazun case, but Davis chose not to do so. [DE 24-7]. The evidence also shows that Owners sought to obtain discovery in the Cazun litigation but that Davis declined. In his Response to Owners' Motion to Continue Damages Hearing in the Fayette Circuit Court Action, Davis stated:

> In the Intervening Complaint filed in August, 2013, Owners was very specific in its allegations which only set forth a cross-claim against Cazun for its subrogation interest. Owners filed no other causes of action and did not seek to intervene to defend the action against Cazun. Since Owners failed to file any action against the Plaintiff discovery was declined[.]

Furthermore, in his Response to Owners' Motion for Leave to File Amended Intervening Complaint to assert a declaration of rights as to the interpretation of the "consent to sue" provision, Davis stated:

> [T]here is not yet a justiciable controversy between Owners and the Plaintiff for a Court to resolve. There is no judgment that Cazun is uninsured or that he has tortuously [sic] caused damage to the Plaintiff. In other words, the issue that Owners wishes to litigate is not yet ripe for litigation, and may never be ripe for litigation.

Davis also stated in a December 20, 2013 correspondence with Owners that Owners "could have sought to compel discovery."

11

Upon a careful review of the record, the Court agrees with Owners that it was unable to effectively participate in the litigation with Cazun. Despite Davis's argument that it was Owners' untimely responses in the Cazun litigation that Owners was prohibited from participating in the damages hearing, the transcript from the damages hearing demonstrates that the Fayette Circuit Court overruled Owners' Motion to Continue because Owners was not a party to the action, and that the interpretation of "consent to sue" provision was a contract issue to be determined in an action between Davis and Owners at a later date.

The Court finds no requirement under Kentucky law that placed a duty on Owners to assert a claim against Davis in the Cazun litigation.[3] Rather, once a settlement was not reached and given the "consent to sue" clause in the Policy, Davis had the choice to (1) sue Owners directly without suing Cazun; (2) sue Cazun with the written consent of Owners and then sue Cazun, and any judgment rendered would be binding on Owners; or (3) sue Cazun without the written of Owners, with the resulting judgment not binding on Owners. Davis chose the latter. As a result, Davis was unable to effectively participate in the litigation with Cazun, which the Court believes to be a reasonable basis for Owners' refusal to consent to the judgment obtained against Cazun, as required by

---

[3] Kentucky Revised Statute (KRS) § 304.20-020, the controlling statute regarding uninsured motorist coverage, merely gives a general outline of the required uninsured motorist coverage.

*Newark*, and that Owners was prejudiced by its inability to protect itself from a default judgment.

In addition to his argument that the Fayette Circuit Court default judgment is enforceable, Plaintiff makes the additional argument that the doctrine of res judicata prevents the re-litigation of the issues of liability and damages that were litigated in the Fayette Circuit Court Action.[4] Res judicata consists of two distinct components, claim preclusion and issue preclusion. *Wayne Cty. Hosp., Inc. v. Jakobson*, 2010 WL 5463361, at *3 (E.D. Ky. Dec. 29, 2010) aff'd, 567 F. App'x 314 (6th Cir. 2014). Claim preclusion requires a final judgment on the merits involving parties and claims identical to a previous suit, whereas issue preclusion more specifically requires that an identical issue—as opposed to an identical claim and identical parties—was raised and adjudicated in the previous suit. *BellSouth Telecommunications, Inc. v. Kentucky Pub. Serv. Comm'n*, 2008 WL 5173334, at *6 (E.D. Ky. Dec. 10, 2008).

In order for claim preclusion to apply, there must be: (1) identity of the parties, (2) identity of the causes of action, and (3) resolution on the merits. *Coomer v. CSX Transportation, Inc.*, 319 S.W.3d 366, 371 (Ky. 2010). Here, the parties are not the same as in the Fayette Circuit Court Action as Cazun is not a party

---

[4] The Court acknowledges Owners' estoppel arguments but declines to address these arguments as they are immaterial to the Court's determination that Defendant is entitled to summary judgment.

13

in this case, and while Owners was an intervening party in the Fayette Circuit Court Action, it was not afforded a full and fair opportunity to litigate the issue of damages as discovery was declined by Davis since Owners had not asserted an uninsured motorist claim. The causes of action are also different: in the Fayette Circuit Court Action, Davis was pursuing a personal injury claim against Cazun, and, here, Davis asserts causes of action for breach of contract, the Kentucky Consumer Protection act, declaratory judgment, and punitive damages against Owners. Finally, the contract dispute at issue in this case was not litigated nor resolved on the merits in the Fayette Circuit Court Action. For these reasons, claim preclusion does not apply.

As to issue preclusion, according to the Kentucky Supreme Court, the following requirements must be met in order for issue preclusion to operate as a bar to further litigation:

> First, the issue in the second case must be the same as the issue in the first case. *Restatement (Second) of Judgments* § 27 (1982). Second, the issue must have actually been litigated. *Id.* Third, even if the issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in the action. *Id.* Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). Since Davis did not assert an uninsured motorist claim against Owners in the Fayette Circuit Court Action and the interpretation

14

of the "consent to sue" provision of the Policy was never litigated by the parties or decided by the Court, issue preclusion also does not apply.[5]

## CONCLUSION

In summary, while it certainly would have been opportune and efficient for Davis's torts claims against Cazun and contract claims against Owners to have been litigated together in the Fayette Circuit Court Action, Davis chose to assert his claims of tort liability against Cazun only. The Policy unambiguously requires the written consent of Owners in order for Owners to be bound by the judgment, and there is no genuine issue of material fact that Owners did not consent to the judgment against Cazun. An insurer's knowledge that the insured has filed suit against the uninsured motorist is not the equivalent to the written consent required by the policy. Where an insurance contract is unambiguous, as here, the ordinary meaning of the words chosen by the insurer, must be followed. *State Farm Mut. Auto. Ins. Co. v Slusher*, 325 S.W.3d 318, 322 (Ky. 2010)(citing *Bituminous Cas. Corp. v. Kenway Contracting, Inc.,* 240 S.W.3d 633, 638 (Ky.2007)). Therefore, while Davis's default judgment may be binding against

---

[5] The Fayette Circuit Court expressly declined to grant Owners' Motion for Leave to File an Amended Intervening Complaint to assert a declaration of rights as to the applicability of the "consent to sue" provision because there was "not a justiciable controversy as Rodney Davis has not presented an uninsured motorist claim against Owners Insurance Company in this action." [DE 24-18].

15

the uninsured motorist, Cazun, without the written consent of Owners, it is not binding on Owners. Finally, the Court finds that the doctrine of res judicata does not apply.

Accordingly, it is hereby **ORDERED**:

(1) That the Motion for Summary Judgment of Plaintiff, Rodney G. Davis, [DE 23] is **DENIED**;

(2) That the Motion for Summary Judgment of Defendant, Owners Insurance Company, [DE 24] is **GRANTED**; and

(3) That Defendant, Owners Insurance Company, is not bound by the Judgment entered by the Fayette Circuit Court on November 27, 2013 in the case styled *Rodney Davis v. Marvin Cazun*, Civil Action No. 13-CI-61.

This the 7th day of January, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge